**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

YUBRAN S. MESLE,
    *Claimant-Appellant,*

v.

SIGNED PERSONAL CHECK NO. 730
OF YURBAN S. MESLE, Drawn from
Bank of America Account No.
0967267676 in the amount of
$240,000.00 in U.S. Currency;
SIGNED PERSONAL CHECK NO. 1004
OF YUBRAN S. MESLE, Drawn from
Wells Fargo Bank Account No.
3572585739 in the Amount of
$5,000.00 in U.S. Currency;
SIGNED PERSONAL CHECK NO. 1040
OF YUBRAN S. MESLE, Drawn, from
Bank of America Account No.
2454767190, No Amount Stated;
$197,031.14 IN U.S. CURRENCY,
Seized from Bank of America
Account No. 0967267676 on
February 22, 2008; $1,598.21 IN
U.S. CURRENCY, Seized from Wells
Fargo Bank Account No.
3572585739 on February 22,
2008,
    *Defendants.*

No. 09-55353

D.C. No.
3:08-cv-00394-
WQH-CAB

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
April 9, 2010—Pasadena, California

Filed August 4, 2010

Before: Dorothy W. Nelson and Stephen Reinhardt,
Circuit Judges, and Robert H. Whaley,
Senior District Judge.*

Opinion by Judge Reinhardt

*The Honorable Robert H. Whaley, United States District Judge for the
Eastern District of Washington, sitting by designation.

## COUNSEL

Karen P. Hewitt, United States Attorney; Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Bruce C. Smith, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Richard M. Barnett, San Diego, California, for the claimant-appellant.

## OPINION

REINHARDT, Circuit Judge:

Yubran Mesle appeals the district court's denial of his motion to set aside an entry of default in a forfeiture proceeding against checks drawn on Mesle's accounts and funds in those accounts. "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Our rules for determining when a default should be set aside are solicitous towards movants,

especially those whose actions leading to the default were taken without the benefit of legal representation. *See id.*; *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-98 (9th Cir. 2001). The district court failed to show such solicitude, holding the movant to a standard inappropriate for determining whether an unrepresented lay party's conduct demonstrated culpability; and made merits decisions as to the movant's defenses that were premature at this stage of the proceedings, and, moreover, were incorrect. We reverse.

## I

On November 8, 2007, Yubran Mesle's brother, Ata Dighlawi, entered the United States carrying three personal checks drawn on Mesle's accounts that totaled $245,000. Each was signed by Mesle, but the payee line for each was blank. Dighwali failed to declare the checks, and customs officials seized them pursuant to 31 U.S.C. §§ 5316(a)(1)(B) and 5324(c)(1).

A week later, Mesle received a letter from Customs informing him that it had seized the checks and that they were subject to forfeiture under 31 U.S.C. § 5317. The letter described a set of legal options available to Mesle, including, among others, filing a petition for administrative relief with US Customs and filing a claim that would give rise to a forfeiture proceeding in federal district court. Nowhere did the letter explain that these options were exclusive of one another, or what would happen if Mesle exercised more than one option.

Included with the letter were several forms, including a "Petition for Remission or Mitigation of Forfeiture," used to initiate an administrative proceeding with Customs; a "Seized Asset Claim Form," used to initiate an action in federal district court; and an "Election of Proceedings Form." The Election of Proceedings Form listed three options for Mesle — 1) requesting that Customs delay forfeiture proceedings and consider an administrative petition, 2) abandoning the property,

and 3) requesting that Customs send his case for court action — and stated that Mesle was to choose only one of these options.

Mesle filled out this paperwork without the help of a lawyer, and apparently without understanding that the instructions to choose one option on the Election of Proceedings form meant that he had to choose either a court action or an administrative petition process. He mailed to Customs both the Petition for Remission and the Seized Asset Claim form; in his declaration he stated that he did so because he hoped for the aid in recovering his property of both the courts and the administrative apparatus at Customs. Mesle also mailed Customs the Election of Proceeding form, having checked the box for a court proceeding. He asserts that he did so only out of confusion, and without realizing that this would nullify his administrative petition.

In February 2008, a United States Magistrate Judge issued two warrants ordering the seizure of $240,000 and $5,000, respectively, from the bank accounts on which the seized checks were drawn. Federal agents then seized $197,031.14 from one of Mesle's accounts and $1,598.21 from another.

On March 3, 2008, the United States filed a complaint for forfeiture pursuant to 31 U.S.C. § 5317(c) against the three checks and the seized funds, and on March 6, 2008, it sent Mesle and other potential claimants a notice of judicial forfeiture proceedings and a copy of the complaint. The notice stated that in order to contest the forfeiture, a claimant had to file a verified claim in district court within 35 days, and an answer to the complaint within 20 days of filing the verified claim.

Mesle received the notice of forfeiture proceedings a few days later, but, again acting without the aid of a lawyer, took no action in response to it. Mesle asserts that he did nothing because he thought that his prior action in sending in the Peti-

tion for Remission and the Seized Asset Claim form was sufficient at least until the resolution of the administrative process that he erroneously thought he had initiated and that a Customs official had told him could take up to a year.

In June 2008, with none of the potential claimants in the forfeiture proceeding having filed a claim or an answer, the government filed a request for Clerk's entry of default as to all potential claimants, which was granted. A month later, on July 18, 2008, the government filed a motion for default judgment. When Mesle received notice of that motion, he realized that action was required and hired a lawyer. On August 7, 2008, Mesle filed a claim in district court demanding the return of the checks and currency, and on August 19, 2008, he filed a response in opposition to the United States' motion and requested that the district court set aside the entry of default for good cause under Federal Rule of Civil Procedure 55(c). After briefing, the district court denied Mesle's motion to set aside the default and granted the government judgment by default.

## II

This court reviews the district court's denial of a Rule 55(c) motion for abuse of discretion. *Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). There is a two step test for abuse of discretion. "[T]he first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc). "[T]he second step . . . is to determine whether the trial court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' " *Id.* "Due to the policy of favoring judgments on the merits, a glaring abuse of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." *United States v. $22,050.00*

*U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (internal quotation marks and citation omitted).

The primary question before us is whether the district court identified the correct legal standards to apply. We hold that it did not. The technical details of its errors are explained below, but the basic deficiencies are simply stated: the district court ignored our oft stated commitment to deciding cases on the merits whenever possible, and held Mesle, a layman working without the aid of an attorney, to the same standards to which we hold sophisticated parties acting with the benefit of legal representation.

**[1]** The Federal Rules provide that a "court may set aside an entry of default for good cause. . . ." Fed. R. Civ. Pro. 55(c). To determine "good cause", a court must "consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party. *See Franchise Holding II*, 375 F.3d at 925-26. This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default. *See id.* Crucially, however, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk*, 739 F.2d at 463; *see also Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006); *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 890 (9th Cir. 2001); *TCI Group*, 244 F.3d at 695-96.[1]

---

[1]Additionally, "[w]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context," such as we consider here. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (quotations and citations omitted). This is because in the Rule 55 context there is no interest in the finality of the judgment with which to contend. *See Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

**[2]** In denying Mesle's motion to set aside the default and entering default judgment in favor of the government, the district court omitted any mention of the "extreme circumstances" requirement for judgment by default. This was no minor omission: rather, it fundamentally altered the standard, turning the court's attention to everyday oversights rather than to whether there were any extreme circumstances. Absent such circumstances, judgment by default is inappropriate in this case.

**[3]** Had the district court properly considered the "extreme circumstances" requirement, it could not have reached the result that it did. Nothing about Mesle's failure to respond to the notice of forfeiture proceedings suggests extreme or exceptional circumstances such as might warrant the "drastic step" of entering a default judgment against his interests. Mesle clearly made a timely attempt to challenge the forfeiture: he sent Customs a Petition for Remission of the seized checks well within the 30 days the letter notifying him of the seizure gave him to file such a petition. His error was that he also filled out a Seized Asset Claim form and checked the box on the "Election of Proceedings" form requesting court action, thus nullifying his administrative petition and triggering a court action rather than an administrative proceeding; he then failed to respond to the notice of judicial forfeiture proceedings. He did all of these things, however, without a lawyer's help. Mesle explained that he thought that he had done what he needed to do to register a claim when he sent off the first round of forms: he had, after all, already sent the government both the Petition for Remission and the Seized Asset Claim form, and was told by a Customs officer that processing his claim might take up to a year. As soon as he received notice that a default had been entered against him and of the government's motion for judgment by default — thus alerting him that he might have misunderstood the situation — he hired a lawyer and responded with the present motion. There is nothing extreme about these circumstances: Mesle displayed a quite ordinary ignorance of the law, but nothing to

warrant the "drastic" step of denying his motion to set aside the default.

The ordinariness of the circumstances and the concomitant inappropriateness of the judgment by default against Mesle are all the more apparent in an examination of the individual "good cause" factors, particularly culpable conduct and meritorious defenses.

### 1. Culpable conduct

**[4]** "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (emphasis in original) (quoting *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)); *see also Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (defendant "intentionally declined" service). As we have previously explained, in this context the term "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *TCI Group*, 244 F.3d at 697. We have "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698. As we explained in *TCI Group*, our approach is consistent with *Pioneer Investment Services Co. v. Brunswick Associates Ltd*, 507 U.S. 380, 388, 394-95 (1993), in light of which it is clear that simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default. *See TCI Group*, 244 F.3d at 696-97; *see also Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).

**[5]** The district court did not apply the applicable standard when determining whether Mesle's conduct was culpable. Instead, it relied on language from *Franchise Holdings II,* in which we stated that a defendant's conduct may be considered culpable "[i]f [the] defendant has received actual or constructive notice of the filing of the action and failed to answer," with no mention of that failure being intentional. *See* 375 F.3d at 926 (internal quotations omitted). This is not the ordinary standard for Rule 55(c) and 60(b) motions; in fact, we have never applied it to deny relief in the context of such motions except when the moving party is a legally sophisticated entity or individual. *See, e.g.*, *Franchise Holdings II*, 375 F.3d at 924 (notice of action received by counsel of company that later tried to set aside the default); *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 690 (9th Cir.1988). It is possible to reconcile the language in *Franchise Holdings II* with the standard in *TCI Group*. When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality. *See Direct Mail Specialists, Inc.*, 840 F.2d at 690 (defendant was "a lawyer, presumably . . . well aware of the dangers of ignoring service of process"). Here, we need not determine, however, whether the *Franchise Holdings II* standard applies to more than sophisticated parties represented by counsel who may be presumed to be aware of the consequences of their actions. It is sufficient to observe that Mesle is not a lawyer and that he was unrepresented at the time of the default; accordingly, the proper standard to apply was that of *TCI Group*.

**[6]** Applying the proper standard, Mesle's conduct was clearly not culpable. The district court determined that Mesle lacked a good faith explanation for his default — in other words, that he was culpable — because the letter from Customs and the accompanying forms that Mesle received in November 2007, together with the notice of judicial forfeiture proceedings he received in March 2008, were sufficient notice of the filing of the forfeiture action and the steps necessary to

avoid default. Mesle's failure to act upon receiving these two sets of documents is insufficient to establish culpability; to the contrary, the facts demonstrate that Mesle was ignorant of the law and unable to understand correctly his legal obligations by reading and synthesizing the information on two sets of documents received months apart — not an unusual occurrence in the case of a layman acting without the help of a lawyer. The district court itself noted that it was important to consider when determining culpability whether the movant had the benefit of counsel, but then utterly failed to apply this consideration when evaluating Mesle's conduct.

**[7]** Moreover, nothing in Mesle's conduct suggests the bad faith necessary to find that he intentionally failed to answer the notice he had received regarding the action. The district court did not point to any "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," *TCI Group*, 244 F.3d at 697; nor could it have done so. Mesle's failure to respond allowed him neither to "take advantage" of the federal government, nor to "manipulate the legal process." The only outcome that such a failure could have earned him was what he received: a default and a heightened possibility of the loss of his property, which was already in the hands of the government and which he had no hopes of reacquiring except through engaging in the legal process. In contrast, behavior that we have found culpable usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court: for instance, when companies act to avoid service in order to thwart their customers' attempts to bring suit against them. *See id.* at 698-99 (collecting cases).

**[8]** In short, the district court erred in finding Mesle's conduct culpable because of his failure to act after being notified of the need to do so, in the absence of any indication that he acted in bad faith.

## 2. *Meritorious defense*

**[9]** "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *See TCI Group*, 244 F.3d at 700 (citations omitted). All that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense: "the question whether the factual allegation [i]s true" is not to be determined by the court when it decides the motion to set aside the default. *Id.* Rather, that question "would be the subject of the later litigation." *Id.*

**[10]** The district court did not take note of the minimal nature of the burden Mesle was supposed to carry. Worse, it made a key factual determination, rejecting Mesle's sworn assertions that the checks and the funds in the underlying accounts belonged to him and not his brother. It decided, instead, that the checks and underlying funds belonged to Mesle's brother because Mesle's brother asserted ownership over the checks when asked about them at the border. Mesle's supposed lack of ownership interest in the seized checks and underlying funds was the district court's only ground for rejecting two of his proposed defenses to the forfeiture action: that he was an innocent owner of the checks and funds, and that forfeiture of all of the seized funds would constitute an excessive fine violative of the Eighth Amendment.

**[11]** There are any number of reasons that the checks might have been in the possession of Mesle's brother, many of which would not involve transfer of ownership of the checks or the underlying funds. Certainly there is no law saying that once a check has been signed and turned over to somebody else, the signatory has given up all ownership interest in the check or the funds underlying it. *Cf.* Cal. Comm. Code § 4403 (under California law, the signatory of a check retains sufficient interest in the check after writing it and hav-

ing it pass from his possession that he may make a timely request to stop payment on it). Under the law of this Circuit, Mesle had a right to raise his allegation that he owned the checks and the funds in court and to have it resolved during a merits proceeding. *See, e.g., United States v. $69,292.00 in U.S. Currency*, 62 F.3d 1161, 1164 (9th Cir. 1995) (proceedings on the merits required to establish ownership over cash that one man was caught smuggling out of the country when his brother, who had transferred money into his accounts, also claimed ownership of that cash); *cf. United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1146 (9th Cir. 1989) ("Although we are familiar with the maxim, 'possession is nine-tenths of the law,' we prefer to apply the remaining one-tenth"). The district court's rejection of Mesle's proffered defenses although he alleged facts sufficient to set forth those defenses was error.

### 3. Prejudice

**[12]** The district court properly determined that the government would not be prejudiced by the setting aside of the default. The government does not contest the correctness of that determination. It does, however, make an argument on appeal that requires discussion. It contends that even though the district court's initial determination as to prejudice was correct, we should now on appeal reconsider the prejudice determination in light of the time that has passed during the pendency of the appeal, which it claims has caused witnesses' memories to fade.

**[13]** The government misunderstands the nature of an appellate inquiry. This court examines whether the district court abused its discretion in denying Mesle's motion to set aside the default, and considers the validity of the actions taken by that court. The government suggests that even if the district court abused its discretion by ruling in its favor, the government should nonetheless prevail, because the appellate process takes time. This is patently erroneous, and, not sur-

prisingly, the government has no cases to support its position. If anything, our cases suggest the opposite: "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701. On appeal, the prevailing party below may not seek to profit from errors that the district court made in its favor by arguing that the time that it takes our court to correct those errors has caused prejudice to it and that such prejudice should be treated as if it had existed at the time that the district court made its initial determination, so as to bar relief to the appellant.

## III

**[14]** All three factors in the "good cause" analysis for setting aside a default under Rule 55(c) favored Mesle: his conduct leading to the default was not culpable; he alleged facts sufficient to establish more than one meritorious defense; and setting aside the default would not prejudice the government. In reaching its decision to the contrary, the district court applied incorrect legal standards with respect to the culpability of a movant's conduct and the meritorious nature of a movant's defenses. More generally, it engaged in its analysis without demonstrating a proper awareness that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk*, 739 F.2d at 463. Accordingly, we conclude that the district court abused its discretion by denying Mesle's motion under Rule 55(c) to set aside the clerk's entry of default against him. We reverse the denial of the Rule 55(c) motion, vacate the judgment entered against Mesle, and remand for the district court to consider on the merits his claim against the seized checks and funds.

**REVERSED, VACATED AND REMANDED**