FILED

OCT 24 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP Nos. CC-11-1088-AlPaMk |
| | CC-10-1425-AlPaMk |
| TINA CHI HOUNG, | (Consolidated) |
| Debtor. | Bk. No. LA 07-21354-BR |
| | Adv. No. LA 09-02717-BR |
| NICK A. ALDEN, | |
| Appellant, | |
| v. | **MEMORANDUM**[1] |
| EDWARD M. WOLKOWITZ, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on July 22, 2011
at Pasadena, California

Filed - October 24, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:   Appellant Nick Alden appeared pro se. Irv Gross, of Levene, Neale, Bender, Yoo & Brill LLP, appeared for Appellee Edward Wolkowitz, Chapter 7 Trustee.

---

[1]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed.R.App.P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

Before: Alley[2], Pappas and Markell, Bankruptcy Judges.

Appellant appeals the bankruptcy court's order denying his motion to set aside an order finding Appellant in default and the subsequent entry of a default judgment. We AFFIRM the entry of the order of default. We VACATE the default judgment and REMAND for further proceedings related thereto.

**I**
**FACTS**

Appellant Nick Alden is an attorney admitted to practice law in the State of California since 1982, who practices civil litigation exclusively in state court.

Appellant's son Guy Alden is a real estate salesman who was hired in 2006 to handle the sale of Debtor Tina Houng's personal residence. At some point, Debtor asked Guy for a referral to an attorney with civil litigation experience. Guy suggested she talk to his father Nick Alden and, several days after the initial interview, the Debtor hired Appellant to represent her in a civil action. Appellant thereafter represented Debtor in three other civil cases and it was agreed, according to Appellant, that he would be paid his attorney fees and costs through escrow from the sale of Debtor's personal residence.

The sale of the property closed on October 26, 2006, and a total of $250,000 was transferred from escrow to Appellant. Other

---

[2]Hon. Frank. R. Alley, III, Chief Bankruptcy Judge for the District of Oregon, sitting by designation.

amounts were transferred to other parties. In a complicated set of transactions engineered to refinance the property, the Debtor obtained a short-term loan from another party prior to the sale and provided a deed to that party. After the sale on October 26, the other party was paid from the proceeds and the property was then deeded back to Debtor's wholly-owned corporation, Unique Holding Corp. Appellant states that Houng did not hire him to advise her in connection with the sale of the property and she never sought his advice on the issue. Appellant alleges that $100,000 of the amount transferred was earmarked for the payment of attorney fees and costs and the remaining $150,000 was to be held in trust by Appellant to secure Debtor's mortgage payments, in case a payment was missed. By March 2007, according to Appellant, there had been no missed mortgage payments and, pursuant to Debtor's instructions, Appellant wired to Debtor's corporation on March 5, 2007 the amount of $150,000.

Debtor filed bankruptcy under chapter 7[3] on December 5, 2007. The chapter 7 trustee, Edward Wolkowitz, Appellee herein, filed an adversary proceeding against Appellant, Appellant's son Guy Alden, and against a Kenneth Lu on November 24, 2009. The Summons and Complaint were served by mail on the Defendants which required that answers be filed by December 28, 2009. The complaint included a

---

[3]Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

claim against all defendants for conspiracy to defraud creditors, and claims against the Appellant for avoidance of a preferential transfer under 11 U.S.C. § 547, and avoidance of a fraudulent transfer under §§ 548 and 544. Appellant failed to file an answer and the Appellee filed a motion for an order of default, which order was entered by the bankruptcy court on January 27, 2010. On January 28, 2010, Appellant filed a motion to strike the complaint which was characterized by the court as a motion to dismiss. Thereafter, the parties executed and filed a Stipulation to Vacate Defaults which had been entered against both Appellant and his son. The stipulation was premised on Appellant's representation that he was unfamiliar with bankruptcy practice and didn't realize that he had been properly served by mail. An Order Approving Stipulation to Vacate was entered on February 26, 2010, giving each Defendant until March 5, 2010 to file a response to the complaint. On March 22, 2010, an answer was filed by Appellant for his son Guy (whom he represented in the matter), but the Appellant did not file an answer for himself.

A hearing on Appellant's motion to dismiss was held on April 7, 2010 and, on April 14, 2010, an order was entered denying the motion to dismiss, without prejudice, with the bankruptcy court to consider Appellant's various defenses at the time of trial. Appellant appealed the order denying his motion to dismiss to the Bankruptcy Appellate Panel which, on July 6, 2010, entered an order dismissing the appeal for lack of jurisdiction. The appeal had been filed on May 5, 2010, twenty-one days after the entry of the order appealed.

The Panel stated that "[e]ven an appeal from an interlocutory order, as in this case, must be filed within the time period provided by Fed. R. Bankr. P. 8002."

On June 30, 2010, Appellee filed a Request for Entry of Default, and an order of default was entered by the bankruptcy court on July 7, 2010. On July 14, 2010, the Appellant filed an answer in the adversary proceeding[4] and, on August 31, 2010, he filed a Motion to Set Aside Default. The motion recites that Appellant was under the mistaken belief that when he filed an answer for Defendant Guy Alden, the answer was also filed for himself.

A hearing was held on October 5, 2010 to consider Appellant's motion to set aside the order of default. Appellant did not appear at the hearing. The bankruptcy judge indicated to the Appellee's attorney that he felt that the Appellant was playing fast and loose with the court and that he would deny the motion to vacate the default. An order was entered on October 15, 2010 denying Appellant's motion to set aside the order of default. On October 22, 2010, Appellant timely appealed the order denying his motion to set aside default to the Bankruptcy Appellate Panel.

A prove-up hearing was set for February 1, 2011, for entry of a default judgment, at which both the Appellant and counsel for Appellee appeared. Appellant began by arguing that the order of default should not have been entered against him because he had made

---

[4]In response to Appellant's filing of his answer, the Appellee, through his attorney, wrote to Appellant demanding that he withdraw his answer on pain of Civil Rule 11 sanctions, as the answer had been filed one week after default had been entered.

a general appearance and had filed a motion to dismiss - he had filed an "Anti-SLAPP" motion (discussed more fully below).  The court interrupted the Appellant, informing him that the issue before the court was whether the Plaintiff had presented sufficient evidence to prove default given that the failure to file an answer admitted everything in the complaint.

Appellee's attorney stated that the declaration submitted by Appellant in the materials for the hearing "purports to attach some sort of a wire transfer in the amount of $150,000 to Unique Holding Corporation." In response, the court stated that "[o]n an evidentiary basis, though, I don't know if that's a genuine document or not, . . . [and] strictly as an evidence matter, I don't see how that can be admitted."

The court then asked the Appellant about his motion to set aside the order of default and his failure to appear at the earlier hearing.  The Appellant stated that he was embarrassed to admit that he is 72 years old and sometimes has a loss of memory.  He woke up that morning, got dressed to come to court, and started working on something else and forgot the hearing.  The court then asked some substantive questions that the judge had intended on asking the Appellant at the earlier hearing.  Appellant explained that he initially failed to timely file an answer because, while he had received the complaint in the mail, he believed he could only be properly served in person, as he doesn't practice bankruptcy and under state law personal service is required.  He believed that it was the Plaintiff's obligation to tell him that service by mail is

6

allowed under the federal rules. The court then asked Appellant whether he knew that, after the original default had been vacated and he had filed his motion to dismiss, he was not required to file an answer until that motion had been resolved. He said he did not know that as he only practices in state court. He filed an answer for his son Guy Alden and was later under the impression that he had filed it for himself. The court examined the answer filed for Guy Alden with the Appellant, who admitted that it was not his answer, but his son's. The Appellant said he could not explain it, but he just later thought that he had also filed the answer on his own behalf.

As to the sufficiency of the complaint, the Appellant had the following comments at the hearing:

1. The complaint indicates that Appellant received the $250,000 in October 2006, fourteen months prior to the Debtor's bankruptcy filing, which would take the transfer out of the statute of limitations. (Appellant did not indicate to which statute of limitation he was referring.)

2. The Complaint alleges that Appellant paid $150,000 of the total back to the Debtor about a year after the sale of the property, but the Plaintiff is ignoring the allegation of fact in the complaint and seeking a judgment for the entire $250,000. Appellant told the Court that he had explained at his deposition that the bank had made a mistake and put the entire $250,000 into a single account, rather than open a separate trust account for the $150,000 as requested by the Appellant.

7

The Appellee's attorney responded that he did not know to which statute of limitation the Appellant was referring, but that the lawsuit was instituted within the two-year limitation period under the Bankruptcy Code to bring a fraudulent transfer claim. Second, the allegation in the complaint that $150,000 was paid back by the Appellant was made only on information and belief. Moreover, ¶ 50 of the complaint talks about a fraudulent transfer of $250,000 and the Trustee is permitted to plead alternative theories.

The transcription of the hearing ends as follows:

"THE COURT: Yeah, I'm going to rule (portion of proceedings not available.)

(Proceedings concluded.)"

An order was entered by the court on February 14, 2011, granting the trustee's motion for entry of the default judgment. The order did not contain any findings of fact or conclusions of law other than entry of judgment in the amount of $250,000 against the Appellant.

The Appellant's appeal of the bankruptcy court's denial of his motion to set aside the order of default was still pending with the Bankruptcy Appellate Panel when Appellant filed an appeal of the bankruptcy court's entry of default judgment. Both appeals were consolidated and are the subject of the matter currently before the Panel.

**II**
**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334

8

and 157(b)(2)(H). We have jurisdiction under 28 U.S.C. § 158.

## III
### ISSUES ON APPEAL

1) Whether the bankruptcy court erred in entering its order denying Appellant's motion to set aside the court's order of default.

2) Whether the bankruptcy court erred in entering its default judgment against Appellant.

## IV
### STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 55(a) and (b)[5], a bankruptcy court may enter an order of default and default judgment against a party and may set aside the default and default judgment under subsection (c). The bankruptcy court's denial of a Civil Rule 55(c) motion is reviewed for abuse of discretion. United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010). The bankruptcy court's decision to enter a default judgment is also reviewed for abuse of discretion. Speiser, Krause & Madole P.C. v. Ortiz, 271 F.3d 884, 886 (9th Cir. 2001).

The appellate court may review the record independently to determine if the bankruptcy court has abused its discretion. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992), *cert. denied*, 506 U.S. 915; O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert), 887 F.2d 955, 957-58 (9th Cir. 1989). An abuse of discretion occurs

---

[5]Made applicable to bankruptcy by Fed. R. Bankr. P. 7055.

9

where "there is a definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon a weighing of relevant factors." Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1278 (9th Cir. 1980)(citations omitted). In reviewing the record, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys, Inc.), 277 F.3d 1057, 1064 (9th Cir. 2002).

**V**
**DISCUSSION**

**A.    Record Available for Review**

The bankruptcy court reopened the record with respect to the order of default when it interrogated the Appellant at the prove-up hearing about the circumstances leading to the default order being entered and Appellant's failure to appear at the hearing on his motion to set aside default.  Besides the transcript of the hearing on Appellant's motion to set aside the default, Appellant's actual motion to set aside default is part of the record as well as his answer filed July 14, 2010 (attached as Exhibit A to Appellant's motion).  Appellant also filed, prior to the prove-up hearing, a memorandum in opposition to the Trustee's motion for a default judgment, with an attached declaration containing a copy of a wire transfer in the amount of $150,000 to Unique Holding Corp., Debtor's wholly-owned corporation.

The bankruptcy court made no findings with respect to the order denying Appellant's motion to set aside the default, and we have no

10

way of knowing whether findings were made, or what they may be, regarding the court's granting of the Trustee's motion for default judgment, due to the apparent failure of the electronic recording system. However, "[e]ven when a bankruptcy court does not make formal findings, . . . the BAP may conduct appellate review 'if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings.' . . . After such a review, however, when the record does not contain a clear basis for the court's ruling, we must vacate the court's order and remand for further proceedings." Veal v. Am. Home Mortg. Serv., Inc. (In re Veal), 450 B.R. 897, 919-20 (9th Cir. BAP 2011)(citations omitted).

When a bankruptcy court elects to use electronic audio recording in place of a court reporter, the resulting audio record constitutes the official record of the proceeding for appeal purposes. Fed. R. Bankr. P. 8009(b) requires that an appellant to the Bankruptcy Appellate Panel file as an appendix to his brief excerpts of the record, including a transcript of the opinion, findings of fact, or conclusions of law delivered orally by the court. An appellant has the burden of filing an adequate record to allow review of the order or judgment appealed from. Drysdale v. Educ. Credit Management Corp. (In re Drysdale), 248 B.R. 386, 388 (9th Cir. BAP 2000), aff'd, 2 Fed.Appx 776 (9th Cir. 2001). Appellant, however, failed to provide a complete transcript of the official record of the court's ruling with regard to the hearing on February 1, 2011. The official record of the hearing which was

11

filed is incomplete due to the apparent failure of the court's electronic recording device.

Part VIII of the Federal Rules of Bankruptcy Procedure are silent as to an appellant's responsibility when the official record is incomplete, as are the Local Rules of the Ninth Circuit Bankruptcy Appellate Panel. When that is the case, 9th Cir. BAP R. 8018(b)-1 provides that "a Panel may apply the Rules of the United States Court of Appeals for the Ninth Circuit and the Federal Rules of Appellate Procedure." Fed. R. App. P. 10(c), followed by the Courts of Appeal, provides as follows:

> **(c) Statement of the Evidence When the Proceedings Were Not Recorded or When a Transcript is Unavailable.** If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

As noted above, Appellant failed to follow the requirement that he augment the official record to provide for appellate review the court's findings of fact and conclusions of law for the ruling from which he appeals. That failure would entitle us to dismiss this appeal. McCarthy v. Prince, 230 B.R. 414, 417 (9th Cir. BAP 1999)(citing Syncom Capital Corp. v. Wade, 924 F.2d 167, 169 (9th Cir. 1999)). "If we do not dismiss, we are entitled to presume that the appellant does not regard the court's findings of fact and conclusions of law as helpful to his appeal." Id. (citing Gionis v.

12

Wayne (In re Gionis), 170 B.R. 675, 680-81 (9th Cir. BAP 1994), aff'd mem., 92 F.3d 1192 (9th Cir. 1996)). The Panel may, in its discretion, consider an appeal notwithstanding appellant's failure to comply with applicable rules. In determining whether to do so in the context of a default judgment, we consider the same factors a trial court considers in determining whether to enter a default judgment, including the size of the judgment, and the strong policy of federal courts favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Accordingly, as did the Panel in McCarthy v. Prince, we exercise our discretion to examine the record that was provided. "In doing so, we look for any plausible basis upon which the bankruptcy court might have exercised its discretion to do what it did. If we find any such basis, then we must affirm." McCarthy v. Prince at 417.

**B.    Fed. R. Bankr. P. 7055**

Rule 7055 incorporates Rule 55 of the Federal Rules of Civil Procedure, which provides that a default may be entered by the Clerk when a party fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). Civil Rule 55(b)(1) allows for entry of a default judgment by the Clerk only when the amount demanded is for a sum certain, "or a sum that can be made certain by computation." Otherwise, entry of a default judgment must be by the court, pursuant to Rule 55(b)(2):

> **(2) By the Court.** In all other cases, the party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate a judgment, it needs to:

13

```
        (A) conduct an accounting;
        (B) determine the amount of damages;
        (C) establish the truth of any allegation by
evidence; or
        (D) investigate any other matter.
```

Courts have wide discretion in deciding whether to enter a default judgment. Wells Fargo Bank v. Beltran (In re Beltran), 182 B.R. 820, 823 (9th Cir. BAP 1995). Factors a court may consider in exercising its discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d at 1471-72.

Where a default has been entered, the court should accept as true all allegations in the complaint, except those relating to damages. Televideo Sys., Inc. v. Heiddenthal, 826 F.2d 915, 917 (9th Cir. 1987); Geddes v. United Fin. Grp, 559 F.2d 557, 560 (9th Cir. 1977). As noted by the Geddes court, the proposition that damages are not deemed established by the default order is supported by Fed. R. Civ. P. 8, which provides that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted when not denied in the responsive pleading." Id. at 560.

Civil Rule 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under [Civil] Rule 60(b)."

14

'The first step of our abuse of discretion test [in reviewing denial of a Rule 55(c) motion] is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested.' . . . '[T]he second step . . . is to determine whether the trial court's application of the correct legal standard was (1)'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' Due to the policy of favoring judgments on the merits, a glaring abuse of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.

Signed Personal Check No. 730, 615 F.3d at 1091 (citations omitted).

To determine "good cause" under this Rule, a court "must 'consider [ ]three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." Id.(citing Franchise Holding II v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004), *cert. denied* 544 U.S. 949 (2005)). This test is disjunctive, such that a finding that any one of the factors is true is sufficient for the court to refuse to set aside the default. It is the same test used to determine whether a default judgment should be set aside under Civil Rule 60(b). Id. While a court has the discretion to refuse to set aside a default judgment for excusable neglect under Fed. R. Civ. P. 60(b) if it finds one of the enumerated factors present, it is not mandatory that it do so. See Brandt v. Am. Bankers Ins. Co. of Fla., 653 F.3d 1108 (9th Cir. 2011). "Crucially, however, 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the

15

merits.'" Signed Personal Check No. 730 at 1091 (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)).

The record before us provides a plausible basis upon which the bankruptcy court could have exercised its discretion to enter the order of default. The record does not, however, support findings that the bankruptcy court considered and applied the Eitel factors with respect to entry of the default judgment or, alternatively, the factors applicable under Fed. R. Civ. P. 55 for setting aside a default judgment.

**1. Culpable Conduct**

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001)(italics in original)(citation omitted). "In this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Signed Personal Check No. 730, 615 F.3d at 1092 (citing TCI Group, 244 F.3d at 697). "We have 'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." Signed Personal Check No. 730 at 1092 (citing TCI Group at 698).

16

The transcript of the February 1, 2011, hearing to consider entry of the default judgment and the record as a whole provide us with evidence from which we could find a plausible basis for the bankruptcy court exercising its discretion to deny the Appellant's motion to set aside the order of default on the basis of bad faith: (1) the bankruptcy court did not find Appellant's assertion credible that he had believed the answer filed for his son had also been filed for himself; (2) Appellant's erroneous belief that personal service was required in a bankruptcy adversary proceeding was not excused under the circumstances of the case; (3) Appellant failed to timely file an answer on two occasions in the same adversary proceeding, the first order of default having been vacated by stipulation of the trustee; (4)Appellant failed to attend the hearing on his motion to set aside the order of default; and (5) the bankruptcy court generally concluded that the Appellant was "playing fast and loose with the court."

**2. Meritorious Defense**

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense.  But the burden on the party seeking to vacate a default judgment is not extraordinarily heavy."  TCI Group, 244 F.3d at 700 (citations omitted).  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default."  Signed Personal Check

17

No. 730, 615 F.3d at 1094 (citing TCI Group at 700). "Rather, that question 'would be the subject of the later litigation.'" Id.

Appellant argues that $150,000 of the money alleged to be the subject of a fraudulent transfer to him from Debtor was returned to the Debtor prior to bankruptcy. He made this allegation in his memorandum to set aside the default and he made it at oral argument at the prove-up hearing, and provided a copy of the $150,000 wire transfer as part of his memorandum in opposition to the Trustee's motion to enter a default judgment. His explanation was that the Debtor requested he hold the $150,000 received from escrow until she instructed him to return it to her, and that that is what he did. He also alleges that he did not advise his client with respect to the real property sale and that $100,000 of the money transferred to him was in payment of attorney fees for representing the Debtor in various court cases. This would constitute a meritorious defense to the fraudulent transfer claim if proven true. The bankruptcy court, however, appeared to base its ruling, at least in part, on whether the copy of the wire transfer attached to Appellant's declaration would be admissible in court. That is not the test in an action to set aside a default or a default judgment. Signed Personal Check No. 730, 615 F.3d at 1094. Rather, the question as to the truth of the factual allegations, or the admissibility of evidence, is to be made at trial.

While it appears that the $250,000 default judgment is based entirely on the fraudulent transfer claim, the complaint also contained a claim for a $100,000 preferential transfer in which

18

Appellant is alleged to be an insider. The rationale for the Trustee considering Appellant an insider is that he had complete dominion and control over the bank account in which the $250,000 transfer was placed. As the $250,000 transfer from escrow to Appellant occurred on October 26, 2006, more than twelve months prior to the Debtor filing bankruptcy, the preferential transfer claim must fail. See 11 U.S.C. § 547(b)(4)(B)(preferential transfer to an insider may be avoided for transfer occurring up to one year before the date of the filing of the bankruptcy petition).

**3. Prejudice**

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" TCI Group, 244 F.3d at 701 (citing Falk, 739 F.2d at 463). "To be considered prejudicial, 'the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.'" Id. (citing Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433-34 (6th Cir. 1996)).

There is nothing in the record to indicate that the Appellee would be prejudiced if the order of default and the default judgment were set aside and it does not appear that Appellee has advanced that argument. Nor is there a record of the bankruptcy court making a finding of prejudice.

**4. Extreme Circumstances**

In Signed Personal Check No. 730, the Court stated that the

19

trial court must consider the requirement that judgment by default be granted in only "extreme circumstances."[6] Failure to do so, the court stated, is no minor omission, but "fundamentally alter[s] the standard." 615 F.3d at 1091-92. There is nothing in the record from which we can find that the bankruptcy court considered this element.

## C.    Appellant's Motion to Dismiss Adversary Proceeding

Appellant argues in his opening brief that the Bankruptcy Appellate Panel should revisit the bankruptcy court's denial of his motion to dismiss ("motion to strike") that he had earlier appealed to the BAP. The Appellee argues that the order denying the motion to dismiss, which was interlocutory in nature, did not merge with the final judgment and is therefore not reviewable. To answer this, we must examine the prior appeal and the nature of the motion to dismiss.

### 1. The Prior Appeal

Appellant appealed the bankruptcy court's denial of his motion to strike the complaint to the Bankruptcy Appellate Panel. The Panel dismissed the appeal, finding that it lacked jurisdiction due to the untimeliness of the filing of the notice of appeal.

### 2. The Final Judgment Rule

Generally, "[a]n interlocutory order becomes appealable when

_____

[6]It should be noted that if this were to be considered as the imposition of a $250,000 fine as a sanction against the Appellant for his failure to timely file an answer, it would most likely be considered as inappropriate under the circumstances. See Dyer v. Lindblade (In re Dyer), 322 F.3d 1178, 1193 (9th Cir. 2003) (Relatively mild non-compensatory fines may be necessary under some circumstances, but the language of § 105(a) does not allow for serious punitive penalties).

20

final judgment is entered. . . . A necessary corollary to the final judgment rule is that a party may appeal interlocutory orders after entry of final judgment because those orders merge into that final judgment." Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp., 248 F.3d 892, 897 (9th Cir. 2001).

The fact that the Appellant had earlier appealed the interlocutory order and it was dismissed on jurisdictional grounds does not foreclose the ability of the Appellant to appeal the matter once the final judgment is entered. See e.g. Victor Talking Mach. Co. v. George, 105 F.2d 697 (3d Cir. 1939)(Appeal of order dismissed on jurisdictional grounds and later heard after entry of final decree).

**3. The Motion to Strike Complaint (Motion to Dismiss)**

The Appellant's motion to strike the complaint is based on alleged violations of Cal. Code Civ. Proc. § 425.16 (Anti-SLAPP Statute), Cal. Civil Code § 47(b)(Litigation Privilege), and Cal. Code of Civ. Proc. § 1714.10 (Conspiracy action against an attorney).

Each of the three state-law provisions cited by Appellant in his motion to dismiss (strike) may have some relevance in an adversary proceeding in bankruptcy court. None, however, may be applied to claims involving federal law, including bankruptcy law. See Restaino v. Bah (In re Bah), 321 B.R.41, 44-45 (9th Cir. BAP 2005)(citing Globetrotter Software, Inc. v. Elan Computer Grp, Inc., 63 F.Supp.2d 1127, 1128 (N.D.Cal. 1999))(Anti-SLAPP statute); In re Cedar Funding, Inc., 419 B.R. 807, 824 (9th Cir. BAP 2009);

21

Johnson v. JP Morgan Chase Bank, 536 F.Supp.2d 1207, 1213 (E.D.Cal. 2008)(citing Martinez v. California, 444 U.S. 277, 284 (1980)) (Litigation Privilege); Spielbauer v. Brigham (In re Brigham), 2007 WL 7532287 (9th Cir. BAP, October 9, 2007)(Conspiracy action against attorney).

Given that the judgment entered by the bankruptcy court and appealed by Appellant is based on a claim under federal bankruptcy law, none of the state law provisions cited above are applicable. We therefore decline to delve any further into the court's failure to consider those provisions.

## VI
## CONCLUSION

We find that there is a plausible basis upon which the bankruptcy court might have exercised its discretion to deny Appellant's motion to set aside the order of default on the basis of culpable conduct on the part of the Appellant. Accordingly, the bankruptcy court's denial of Appellant's motion to set aside the order of default is AFFIRMED.

We do not find in the record, however, a plausible basis upon which the bankruptcy court could have entered the default judgment. Appellant provided a plausible defense to the claims alleged against him and the amounts claimed in the complaint. These issues are subject to review in the prove-up hearing. Fed. R. Civ. P. 55(b)(2). The bankruptcy court's entry of the default judgment will therefore be VACATED and the matter REMANDED for further proceedings under Fed. R. Bankr. P. 7055.

22