NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 9 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VISTANCIA DEVELOPMENT LLC, a Delaware limited liability company, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> DBD, LLC, an Arizona limited liability company, <br><br> Defendant-Appellant. | No. 22-16024 <br><br> D.C. No. 2:21-cv-01707-SMB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted May 18, 2023
Phoenix, Arizona

Before: NGUYEN and COLLINS, Circuit Judges, and KORMAN,** District Judge.

Defendant-Appellant DBD, LLC ("DBD") appeals the district court's denial

of its motion to reopen a default judgment that was awarded in favor of Plaintiff-

Appellee Vistancia Development LLC ("Vistancia"). We affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## I

Vistancia sued DBD and its sole member and manager, Marsha Preston, for violations of the Lanham Act (including trademark infringement and cybersquatting) and related common-law torts. Vistancia never served the summons and complaint on Preston, and the claims against her were dismissed for lack of service. Vistancia attempted to serve DBD through DBD's designated statutory agent for service of process, Alpha Legal Forms & More, Inc. ("Alpha Legal"). Although the parties dispute whether Alpha Legal itself was directly served, there is no dispute that Alpha Legal received the summons and complaint and attempted to forward them to DBD. However, because DBD had failed to update its address with Alpha Legal, the documents were returned as undeliverable. The district court clerk entered a default against DBD, and two months later the district court entered a default judgment against DBD that awarded permanent injunctive relief and $100,000 in statutory damages. After Preston learned of the suit, DBD filed a motion to set aside the default and the default judgment, and the district court denied that motion. DBD timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II

Under Federal Rule of Civil Procedure 55(c), a district court "may set aside an entry of default for good cause, and it may set aside a final default judgment

2

under Rule 60(b)."  Under our caselaw, "[t]he 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)."  *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).  To establish good cause, DBD bore the burden of showing that all three of the following factors "favor vacating the judgment": "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff."  *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001); *see also United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2020) ("*Mesle*").  The district court denied the motion solely on the ground that "DBD's culpable conduct led to the default judgment," and it therefore did not address the other two factors.  We review for abuse of discretion the district court's determination that DBD's culpable conduct led to the default.  *Franchise Holding*, 375 F.3d at 925.

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer."  *TCI Grp.*, 244 F.3d at 697 (citation omitted).  The district court did not abuse its discretion in holding that DBD had received constructive notice of the filing of this suit through the service of the complaint and summons on its statutory agent.  *See* Ariz. Rev.

3

STAT. § 29-3119(A); FED. R. CIV. P. 4(h)(1)(A), 4(e)(1).[1]  Accordingly, whether DBD's conduct was culpable turns on whether it "intentionally failed to answer." *TCI Grp.*, 244 F.3d at 697 (emphasis omitted); *see also Mesle*, 615 F.3d at 1093. We have held that, in the context of an unsophisticated defaulting party—*i.e.*, one that "is not a lawyer and that . . . was unrepresented at the time of the default"—a failure to answer is intentional only if the party "acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'"  *Mesle*, 615 F.3d at 1092 (citation omitted).  The district court concluded that DBD was not a sophisticated party, and Vistancia has not contested that conclusion in this court. Accordingly, the bad faith standard described in *Mesle* applies here.

Preston filed a declaration stating that DBD did not receive *actual* notice of the suit until after the entry of the default and the default judgment; Vistancia presented no contrary evidence; and the district court made no contrary finding. Consequently, DBD's failure to respond would involve bad faith only if the reason that DBD did not receive the complaint and summons from Alpha Legal was *itself*

---

[1] We reject DBD's contention that the service on Alpha Legal was invalid.  Alpha Legal submitted a declaration specifically acknowledging that it had been served. Although DBD contended that the address shown on Vistancia's return of service was not then Alpha Legal's physical address, the attachment to the declaration submitted by Alpha Legal lists that exact address as being Alpha Legal's address at the time it attempted to forward the documents to DBD.

the result of bad faith.

On that score, the district court correctly noted that "DBD made no argument as to why it did not update its mailing address with its statutory agent." Indeed, neither DBD's motion nor the declaration and exhibits submitted in support of that motion provided any explanation whatsoever for that failure. That failure is significant, because DBD provided no other explanation as to why it did not receive the documents forwarded by Alpha Legal. Even after Vistancia specifically opposed the motion on the ground that DBD's failure to update its address with its statutory agent was done "in order to avoid service and otherwise manipulate the legal process," DBD still failed to address the point in its reply. Our caselaw is clear that "the party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment," *TCI Grp.*, 244 F.3d at 696, and DBD's papers in the district court reflect a wholesale failure of proof on the crucial issue of how and why it had failed to update its address with its statutory agent for service of process. We therefore cannot say that the district court abused its discretion in concluding that DBD had failed to present any argument or evidence on this score. And given the complete lack of evidence in the record to show that DBD's failure to update its address was *not* the result of bad faith, the district court did not abuse its discretion in reaching the further conclusion that, to the extent that DBD "*may* claim it accidentally failed to update

5

Alpha Legal," DBD had not shown that its "inexcusable neglect" was not "an attempt to take advantage of the opposing party and manipulate the legal process."

## III

The district court did not err in rejecting DBD's arguments concerning the scope of relief granted in the default judgment.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Here, the allegations of the complaint are legally sufficient to adequately support the relief awarded by the district court. The complaint alleges that DBD's own website confirmed that it distributed its "NorthPointe Magazine"—which the complaint describes as a "home and lifestyle magazine"—"exclusively via direct mail to residences" in a specific portion of the "Phoenix metro area" that included three particular zip codes, including those in which Northpointe at Vistancia was located. Although the parties' respective marks are not identical, the word "Northpointe" (or "NorthPointe") is the dominant feature of both, and DBD engaged in a highly targeted distribution of a home-and-lifestyle magazine in precisely the community in which the Northpointe development is located. Although DBD's website was obviously more broadly available on the internet, the complaint alleges that the website explicitly identified the "Areas Served" by the

6

magazine as "exclusively" the above-referenced part of the Phoenix metropolitan area. Moreover, DBD's targeted focus and its disregard of cease-and-desist letters supports the conclusion that it acted in bad faith to profit from association with the Northpointe development. Taking these and the other facts pleaded in the complaint as true, there is an ample basis for finding a likelihood of confusion sufficient to support DBD's liability under Vistancia's trademark, cybersquatting, and unfair competition claims. *See DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (describing elements of cybersquatting claim); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (describing elements of claim for injunctive relief under trademark provisions of Lanham Act).

Based on this record, the district court also did not abuse its discretion in issuing a permanent injunction against further infringement and requiring DBD to surrender the domain name of its website.[2] *See United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir. 1994) ("'A district court's grant of permanent injunctive relief is

---

[2] We also reject DBD's contention that the injunction was unlawful because it extended to Preston, a non-party. Preston was not specifically named in the injunction; instead, she fell within its scope *only* because of her status as a member and officer of DBD. On this score, the district court's injunction appropriately took account of the fact that DBD can only act through its agents, officers, and employees. We also reject DBD's claim that Vistancia's request that the default judgment include permanent injunctive relief was procedurally inadequate. Vistancia's complaint and its motion for default judgment specifically asked for such relief, and its motion expressly argued that Vistancia has suffered irreparable injury from DBD's ongoing unlawful actions.

reviewed for an abuse of discretion or application of erroneous legal principles.'"

(citation omitted)).

As to damages, Vistancia explicitly elected to seek only *statutory* damages for cybersquatting under § 35 of the Lanham Act. *See* 15 U.S.C. § 1117(d) (stating that a plaintiff may "recover, *instead of actual damages and profits*, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just" (emphasis added)). The allegations of the complaint, together with the additional materials submitted in support of Vistancia's motion for default, were adequate to support the discretionary conclusion that DBD's conduct was sufficiently in bad faith to warrant the maximum statutory award of $100,000.

**AFFIRMED.**