**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

ALL FUNDS IN BLUFFVIEW
SECURITIES ACCOUNTS, LP,
          *Defendant*,

                    v.

ANGELA MARIA GOMEZ AGUILAR;
ENRIQUE FAUSTINO AGUILAR
GOMEZ; GRUPO INTERNACIONAL DE
ASESORES S.A.,
          *Claimants-Appellants*.

No. 13-55155

D.C. No.
2:11-cv-05472-
AHM-AGR

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
February 10, 2015—Pasadena, California

Filed April 10, 2015

Before: Consuelo M. Callahan, Paul J. Watford,
and John B. Owens, Circuit Judges.

## SUMMARY[*]

### Default Judgment

The panel affirmed the district court's denial of claimants' Fed. R. Civ. 60(b)(1) motion to set aside a default judgment for forfeiture of funds held in a brokerage account. The panel held that courts reviewing a Fed. R. Civ. P. 60(b) motion to set aside a default judgment must apply the factors outlined in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam), to ensure that the "extreme circumstances" policy is recognized, but a district court is not required to articulate on the record particular "extreme circumstances" before it denies the motion. Applying the *Falk* factors, the panel held that claimants had no meritorious defense, and concluded that the district court did not abuse its discretion in denying their Rule 60(b)(1) motion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Fernando L. Aenlle-Rocha (argued) and Arash Sadat, White & Case LLP, Los Angeles, California, for Claimants-Appellants.

Jennifer Resnik (argued) and Robert E. Dugdale, Chief, Criminal Division, Assistant United States Attorneys, and André Birotte Jr., United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

OWENS, Circuit Judge:

Angela Maria Gomez Aguilar ("Angela"), Enrique Faustino Aguilar Gomez ("Enrique Jr."), and Grupo Internacional de Asesores S.A. ("Grupo") (collectively the "Appellants") appeal the district court's denial of their Federal Rule of Civil Procedure 60(b)(1) motion to set aside a default judgment for forfeiture. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

---

[1] Appellants and the government have both moved for judicial notice of a number of documents. We grant the government's motion in full. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotation marks omitted)). We grant Appellants' motion in part as to the four documents from the related criminal case, *see id.*, and deny it in part as to the FBI Form 302 memorandum, *see In re Citric Acid Litig.*, 191 F.3d 1090, 1105 (9th Cir. 1999) (declining to resolve dispute over

## I.  FACTS AND PROCEDURAL HISTORY

### A. Preliminary Proceedings, Criminal Trial, and Dismissal

Angela and her husband Enrique Faustino Aguilar Noriega ("Enrique Sr.") were stockholders of and controlled Grupo, a Panamanian corporation.  In December 2008, as part of a long-term Foreign Corrupt Practices Act ("FCPA") investigation, the government seized approximately \$2.4 million held at one time in Grupo's name in a brokerage account.  The government believed that illegal payments to Mexican officials had been funneled through Grupo's account.  In June 2009, the government, Angela, and Enrique Sr. entered into a stipulation to delay the filing of a civil forfeiture complaint against the seized funds pending the outcome of the criminal investigation.

In August 2010, agents arrested Angela while she was traveling in Texas for business.  An initial indictment was filed, with a superseding indictment returned shortly thereafter.  It charged Angela with one count of conspiracy to commit money laundering and one count of money laundering.[2]  It also charged two individuals and their American company with conspiracy to violate the FCPA and five substantive FCPA violations.  All charges concerned the

---

whether "an FBI investigative report" was a proper subject of judicial notice because it "would not change the result in this case").

[2] The superseding indictment also charged Enrique Sr. with various related crimes (including conspiracy to violate the FCPA and launder funds), but he remained a fugitive during the relevant time period.

alleged bribes to Mexican officials that the American firm funneled through Grupo.

Before and during trial, the defendants repeatedly moved to dismiss the superseding indictment for prosecutorial misconduct. Shortly before jury deliberations began, two of Angela's co-defendants again moved to dismiss the superseding indictment for prosecutorial misconduct (Angela did not join this motion). On May 10, 2011, the jury found Angela and her co-defendants guilty.[3] On June 3, 2011, Angela and the government agreed, among other things, that she would not contest any civil or criminal forfeiture proceedings, and would take the steps necessary to pass clear title for the Grupo brokerage account to the United States. She also agreed that the funds in the brokerage account could be forfeited. In exchange for these concessions, the government agreed to recommend a sentence of time served and three years of supervised release. The district court accepted the agreement, and Angela returned to Mexico.

Despite the guilty verdict, the co-defendants' misconduct motion remained pending. After an extensive hearing and significant briefing, the district court concluded in a lengthy order on December 1, 2011 that the government had engaged in significant misconduct, ranging from permitting an agent to testify falsely before the grand jury to "recklessly fail[ing] to comply with its discovery obligations." The district court vacated the co-defendants' convictions and dismissed the superseding indictment. The government filed a notice of appeal, but ultimately declined to challenge the December 1

---

[3] The district court granted Angela's Federal Rule of Criminal Procedure 29 motion as to the substantive money laundering count.

order.    The district court granted Angela's subsequent unopposed motion to vacate her conviction.

## B.  The Civil Forfeiture Litigation

On June 30, 2011, the government filed a civil complaint seeking forfeiture of the Grupo funds in the brokerage account.   In November 2011, the clerk entered a default against Angela, Enrique Sr., Grupo, and all other potential claimants.   After correspondence with counsel for Angela, Enrique Sr., and Grupo, the government filed a motion for entry of default judgment, which Angela, Enrique Jr. (the son of Angela and Enrique Sr.), and Grupo opposed.   Following a hearing, the district court granted the government's motion for entry of default judgment.    The court then denied Appellants' motion to set aside the default judgment under Rule 60(b)(1).

Under Rule 60(b)(1), a court may set aside a default judgment for "mistake, inadvertence, surprise, or excusable neglect."   Applying our decision in *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010), the district court listed the three disjunctive factors used to determine if "excusable neglect" could permit setting aside the Appellants' default: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party."[4]   After concluding that Appellants had acted culpably and Enrique Jr. lacked

---

[4] Because the government did not contest prejudice, the district court did not address this factor.

standing to contest the forfeiture,[5] the district court examined the two potential defenses that Angela and Grupo had asserted. It rejected the innocent owner defense for Angela, as she was a shareholder in Grupo, but not an owner of the funds.[6] In the alternative, the district court concluded that any interest she had was "after-acquired" and thus did not fall within 18 U.S.C. § 983(d)(2). The district court also rejected the arguments of Angela and Grupo that the civil complaint failed to state a claim, as the allegations were sufficient to meet the government's burden at this initial stage.

Because the defendants could not allege a meritorious defense, the district court refused to set aside the default judgment. The court did not specifically articulate any "extreme circumstances" justifying entry of default and default judgment.

## II. STANDARD OF REVIEW

A district court's denial of a motion to set aside a default judgment under Rule 60(b)(1) is reviewed for abuse of discretion. *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1110 (9th Cir. 2011). "[T]he first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested. . . . [T]he second step of our abuse of discretion test is to determine whether the trial court's application of the

---

[5] We omit the district court's discussion of both issues because we need not reach either to resolve this case.

[6] No one asserted that Grupo (which funneled the payments to the Mexican officials) was an "innocent owner" of the contested funds, so we do not address that issue here.

correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).

## III.  DISCUSSION

When a defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect," "a court must consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *Mesle*, 615 F.3d at 1091 (alterations in original) (internal quotation marks omitted).  "This standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*  Courts often refer to these factors as the "*Falk* factors" because they were first articulated in our decision in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam).

## A.  "Extreme Circumstances"

Before addressing the *Falk* factors, we must decide if our precedent requires a district court to state why a particular case presents "extreme circumstances" that would permit a default judgment to stand, even when it faithfully applies the *Falk* factors.  Appellants rely heavily on language in *Mesle* to argue that the failure to do so mandates automatic reversal. To answer this question, we start with the origin of the phrase "extreme circumstances."

In *Falk*, we articulated "two policy concerns" that guide our review of Rule 60(b) motions in the default judgment context. The first was that Rule 60(b) is "remedial" and "must be liberally applied." The second was that a default judgment "is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* at 463. To ensure that we carried out these two policies, we adopted the now familiar three-factor test when "considering a motion to reopen a default judgment under Rule 60(b)." *Id.* (citing *Gross v. Stereo Component Sys.*, 700 F.2d 120, 122 (3d Cir. 1983)).

The "extreme circumstances" policy language was intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion. When courts apply these factors, they must keep this policy concern in mind. However, nothing in *Falk* (or any other published decision) requires courts, in addition to applying these three factors, to articulate why a particular case presents "extreme circumstances." Our court has applied the *Falk* factors many times to ensure that default judgments are entered only in extreme circumstances, but has never imposed the "magic words" requirement that Appellants seek.[7] As we have explained: "The *Falk* factors

---

[7] *See, e.g.*, *Brandt*, 653 F.3d at 1111–12; *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 1000–01 (9th Cir. 2007); *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925–27 (9th Cir. 2004); *Laurino v. Syringa Gen. Hosp.*, 279 F.3d 750, 753–54 (9th Cir. 2002); *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 886–87 (9th Cir. 2001); *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696–700 (9th Cir. 2001); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1448–49 (9th Cir. 1991); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1391–92 (9th Cir. 1988); *Cassidy v. Tenorio*, 856 F.2d 1412, 1415–17 (9th Cir. 1988); *Direct Mail Specialists, Inc. v.*

quite effectively capture in the default judgment context the very equitable factors involved in the balance between the competing interests in assuring substantial justice and in protecting the finality of judgments that underlies Rule 60(b)(1)." *TCI Grp.*, 244 F.3d at 696. In other words, faithful application of the *Falk* factors ensures that default judgments will stand only in extreme circumstances. There is no need to require district courts, in addition to applying these factors, to explain why a particular case is "extreme."

A rule to the contrary would make little sense. For example, if a claimant has no meritorious defense to a forfeiture complaint (as is the case here), then it is unclear what a further inquiry into "extreme circumstances" would accomplish: "If . . . the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment." *Id*. at 697; *see also Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("To permit reopening of the case in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system."). A complete lack of meritorious defenses itself constitutes an extreme circumstance.

A straightforward reading of *Mesle* confirms this conclusion. In *Mesle*, we reversed a district court's refusal to

---

*Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988); *Meadows v. Dominican Republic*, 817 F.2d 517, 521–22 (9th Cir. 1987); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814–15 (9th Cir. 1985).

set aside entry of default against the pro se claimant.[8] We explained that the district court "ignored our oft stated commitment to deciding cases on the merits whenever possible, and held Mesle, a layman working without the aid of an attorney, to the same standards to which we hold sophisticated parties acting with the benefit of legal representation." 615 F.3d at 1091. We faulted the district court for "turning the court's attention to everyday oversights rather than to whether there were any extreme circumstances." *Id.* We did not hold that the failure to recite the words "extreme circumstances" automatically qualifies as a reversible abuse of discretion. Rather, we simply held that, in applying the *Falk* factors, the district court "failed to apply this consideration when evaluating Mesle's conduct." *Id.* at 1093. As we put it another way in the conclusion, "[m]ore generally," the district court "engaged in its analysis without demonstrating a proper awareness that 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id.* at 1095 (quoting *Falk*, 739 F.2d at 463).

We confirm our three decades of precedent holding that courts reviewing a motion to set aside a default judgment must apply the *Falk* factors to ensure that the "extreme circumstances" policy is recognized. However, nothing in Rule 60(b) nor our precedent requires a district court to articulate on the record particular "extreme circumstances" before it denies a motion to set aside a default judgment.

---

[8] The standard for determining whether to set aside entry of default for "good cause" under Rule 55(c) "is the same as is used to determine whether a default judgment should be set aside under Rule 60(b)." *Mesle*, 615 F.3d at 1091. This factual difference is thus immaterial to our analysis.

**B. Meritorious Defense**

We now apply the *Falk* factors.  A district court may deny relief under Rule 60(b)(1) when the moving party has failed to show that she has a "meritorious defense."  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default.  Rather, that question 'would be the subject of the later litigation.'"  *Mesle*, 615 F.3d at 1094 (alteration in original) (citation omitted) (quoting *TCI Grp.*, 244 F.3d at 700).  This approach is consistent with the principle that "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy."  *TCI Grp.*, 244 F.3d at 700.  Appellants contend that they have two potentially meritorious defenses: (1) Angela and Enrique Jr. argue that they are innocent owners of the funds in the Grupo Account; and (2) all three Appellants argue that the government's complaint fails to state a claim.

We start with Angela and Enrique Jr.'s innocent owner defense.   Under 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."   Angela and Enrique Jr. argue that this provision applies because they were unaware of the alleged bribery scheme.  Even if they were in the dark, the problem for Angela and Enrique Jr. is that they lack "an ownership interest in the specific property sought to be forfeited,"  18 U.S.C. § 983(d)(6)(A).  As the district court recognized, there is "no allegation that Angela [and Enrique Jr.] personally owned any of the funds" in the Grupo Account because—"as a shareholder"—neither "hold[s] legal title to any of [Grupo's] assets."   *See also Dole Food Co. v.*

*Patrickson*, 538 U.S. 468, 474–75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . . ." (citations omitted)); *United States v. Bennett*, 621 F.3d 1131, 1136 (9th Cir. 2010) ("As early as 1926, the Supreme Court recognized that '[t]he owner of the shares of stock in a company is not the owner of the corporation's property.' While the shareholder has a right to share in corporate dividends, 'he does not own the corporate property.'" (alteration in original) (citation omitted) (quoting *R.I. Hosp. Trust Co. v. Doughton*, 270 U.S. 69, 81 (1926))).

Angela and Enrique Jr.'s only response to this claim is that Panamanian, not American, corporate law governs whether they have a personal ownership interest in the Grupo Account. However, Angela and Enrique Jr. have failed to cite any Panamanian statutes or cases that show how Panamanian corporate law differs from American corporate law in this context, either here or before the district court. As a result, though the burden of alleging a potentially meritorious defense is "minimal," *Mesle*, 615 F.3d at 1094, we will not "manufacture" this argument for them, "particularly when, as here, a host of other issues are presented for review," *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

We next consider Appellants' joint defense that the government's complaint fails to state a claim. "*In rem* forfeitures are conducted in accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims." *United States v. Real Prop. at 2659 Roundhill Dr.*, 194 F.3d 1020, 1024 n.3 (9th Cir. 1999). Under Supplemental Rule G(2)(f), the government's complaint must

"state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Few courts have interpreted Supplemental Rule G(2)(f), but the advisory committee's note indicates that the language is designed to codify the "standard" that "has evolved" from case law interpreting its predecessor—Supplemental Rule E(2)(a)—and "carr[y] this forfeiture case law forward without change." Supplemental Rule E(2)(a) requires that a complaint in an admiralty action "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

The leading case on Supplemental Rule E(2)(a)—again as identified by the advisory committee's note to Supplemental Rule G(2)—is *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002). *See Gang Luan v. United States*, 722 F.3d 388, 398 & n.14 (D.C. Cir. 2013) (interpreting the advisory committee's note as "explaining that Supplemental Rule G(2)(f) was intended to codify the interpretation of Rule E(2)(a) set out in *Mondragon*"). In *Mondragon*, the Fourth Circuit was clear that Supplemental Rule E(2)(a) does not articulate an onerous standard. Looking to the text of the rule, it held that a complaint must "state[] the circumstances giving rise to the forfeiture claim with sufficient particularity that [the claimant] [can] commence[] a meaningful investigation of the facts and draft[] a responsive pleading" and "permit a reasonable belief for pleading purposes that [the property in question] . . . [is] subject to forfeiture." *Id.* at 866-67.

Though we have held that this is a higher standard than "notice pleading," *see United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994), the government's complaint meets this low bar. In substance, the government's complaint mirrors the superseding indictment. It sets out the various payments from Lindsey Manufacturing to Grupo, describes the various ways in which Enrique Sr. bribed Mexican officials, and then details the various contracts that Lindsey Manufacturing obtained as a result of these bribes. Though Appellants are correct that there are potential issues with the government's case—including some that the district court explicitly identified in its December 1 order—the facts detailed in the complaint "permit a reasonable belief" that the Grupo Account is subject to forfeiture and allow Appellants to "draft[] a responsive pleading." The Appellants' detailed responses to the government's allegations in their briefing here and before the district court bear out the latter point.

Even if, as the Appellants argue, the government may not be able to show *all* of the claimed funds are tainted and subject to forfeiture, this does not render the complaint deficient. We have consistently instructed district courts to wait until trial to adjudicate arguments that a portion of the property that the government claims is not subject to forfeiture. *See, e.g.*, *United States v. Two Tracts of Land in Cascade Cnty.*, 5 F.3d 1360, 1362 (9th Cir. 1993) (holding that "a triable issue of fact remain[ed]" as to whether a "fractional interest" of the claimant's home was not subject to forfeiture); *United States v. Real Prop. Located at Section 18*, 976 F.2d 515, 517-18 (9th Cir. 1992) (remanding to allow the claimant to "hav[e] her day in court" concerning her argument that part of the seized lot was not subject to forfeiture); *see also United States v. One Parcel of Real*

*Prop.*, 921 F.2d 370, 375 (1st Cir. 1990) ("Whether none, all, or only a portion of the defendant property is forfeitable is not determined at the pleadings stage, but at trial."). The corollary of this instruction is that the government need not show that all of the claimed property is tainted to satisfy Supplemental Rule G(2)(f). Similarly, there is no merit to Appellants' argument that the government's complaint is legally insufficient because it relies on the lowest intermediate balance rule. Since tracing is not at issue at the motion to dismiss stage, the government's current legal theory is irrelevant. As we have said before in this context, "the government is not required to prove its case simply to get in the courthouse door." *United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004).

As a result, Appellants have no meritorious defense. Because this was "sufficient reason for the district court to refuse to set aside the default," *Mesle*, 615 F.3d at 1091, we decline to reach the other two *Falk* factors.[9]

## IV. CONCLUSION

In sum, the district court did not err by failing to articulate why this case presents "extreme circumstances." Though

---

[9] We also decline to reach the question of Enrique Jr.'s standing. *See Noel v. Hall*, 568 F.3d 743, 748 (9th Cir. 2009) ("[W]e need not reach the question of the precise scope of statutory standing; such standing, unlike constitutional standing, is not jurisdictional. We can thus bypass the issue when, as is the case here, the plaintiff's claims would fail anyway." (citation omitted)); *see also United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1012–13 & n.2 (9th Cir. 2013) (distinguishing compliance with the "requirements of forfeiture claim rules" from the requirements of "Article III standing" (alterations omitted)).

district courts should be mindful that default judgments are disfavored when applying the *Falk* factors to Rule 60(b)(1) motions, no magic words are required. In the absence of a meritorious defense, we conclude that the district court did not abuse its discretion in denying Appellants' Rule 60(b)(1) motion.

**AFFIRMED.**