FILED

JUN 28 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-18-1225-TaLS |
| | CC-18-1226-TaLS |
| SHELLIE MELISSA HALPER, | (related) |
| Debtor. | Bk. No. 1:09-bk-23807-GM |
| SHELLIE MELISSA HALPER, | Adv. No. 1:11-ap-01317-GM |
| Appellant, | |
| v. | MEMORANDUM* |
| SOLOMON M. COHEN, | |
| Appellee. | |

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

SHELLIE MELISSA HALPER,

Appellant,

v.

TWIN PALMS LENDING GROUP, LLC,

Appellee.

Adv. No. 1:11-ap-01319-GM

Argued and Submitted on May 23, 2019
at Pasadena, California

Filed – June 28, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

———

Appearances:     Blake Joseph Lindemann of Lindemann Law Group PLC
argued for appellant Shellie Melissa Halper; Allan D.
Sarver of the Law Offices of Allan D. Sarver argued for
appellees Solomon M. Cohen and Twin Palms Lending
Group, LLC.

———

Before: TAYLOR, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Plaintiffs Solomon Cohen and Twin Palms Lending Group LLC (collectively, "Lenders") filed adversary proceedings against debtor-defendant Shellie Halper in 2011. Five years later, Ms. Halper had not yet appeared for her deposition. After numerous attempts to obtain cooperation and participation in this critical discovery, Lenders sought and obtained terminating sanctions and a default judgment. On appeal, we affirmed those decisions; Ms. Halper's subsequent appeal is pending before the Ninth Circuit.

Apparently unwilling to rely solely on the Ninth Circuit appeal, Ms. Halper also attempted a flanking maneuver: she filed a motion seeking an indicative ruling on an underlying Civil Rule 60 motion to vacate the default judgment.[1] Her goal was to obtain a victory that supported her Ninth Circuit appeal. But the bankruptcy court denied the motion.

And, because the bankruptcy court did not err, we AFFIRM.

## FACTS

We discuss the underlying facts in brief; we discuss them in more depth in our earlier decision in these cases. *See Halper v. Twin Palms Lending Group, LLC (In re Halper)*, BAP Nos. CC-17-1171-FSTa, CC-17-1172-FSTa,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2018 WL 1354431, (9th Cir. BAP Mar. 13, 2018).

In October 2009, Ms. Halper filed a chapter 11 bankruptcy petition; it was later converted to chapter 7. Approximately two years later, Lenders filed adversary proceedings against Ms. Halper seeking a nondischargeability determination under § 523(a)(2)(A).

The litigation got off to a slow start. Ms. Halper and Lenders stipulated to stay the adversary proceedings given Ms. Halper's desire to protect her Fifth Amendment privilege against self-incrimination in alleged related criminal investigations. The bankruptcy court entered a consistent order and set a status conference for the next year. Over the next three years, the parties requested six continuances of the discovery stay for a variety of reasons, including Ms. Halper's continued assertion of her Fifth Amendment privilege and the pending resolution of state court claims against her business partner.

Eventually, in 2015, Lenders were ready to move forward with discovery and sought to terminate the stay. They argued that there was no pending FBI investigation and that they had obtained a $23,000,000 fraud judgment against Ms. Halper's business partner. Ms. Halper, on the other hand, apparently wanted the litigation to languish. She reasserted her Fifth Amendment privilege arguments and expressed ignorance of the cessation of a criminal investigation.

The bankruptcy court then heard argument and terminated the stay.

It determined that the statute of limitations on the alleged criminal charges had run, and it ordered the parties to recommence litigation and discovery. And at a later hearing, the bankruptcy court informed Ms. Halper's counsel that she would need to show a good-faith basis for a continued assertion of Fifth Amendment protections. The parties represented that Ms. Halper's deposition was scheduled.

But things still went slowly. Shortly before the deposition date, Ms. Halper obtained new counsel. The parties then stipulated to continue her deposition to September—then to October—then to January 2016—then to March—and then to an unspecified date. Lenders finally asked the bankruptcy court to set the date. It ordered that the deposition would occur in May.

A week before the May deposition, Ms. Halper's counsel said she would not attend. The parties rescheduled for June. Two days before the June deposition, Ms. Halper's counsel again said she would not attend. The parties stipulated to a September date, but Lenders reserved rights to seek sanctions. An hour before the September deposition, Ms. Halper's counsel, yet again, said that she would not appear.

Not surprisingly, Lenders requested an order to show cause why Ms. Halper should not be held in contempt for repeatedly failing to sit for her deposition; they sought terminating sanctions under Civil Rule 37. In the alternative, they sought monetary sanctions, but they argued that

monetary sanctions would be insufficient to compel Ms. Halper's compliance.

Over Ms. Halper's opposition, the bankruptcy court granted the motion, issued an order to show cause, and determined that cause for sanctions existed. But while the bankruptcy court expressed disapproval of Ms. Halper's "abusive" conduct, it exercised restraint. It allowed Ms. Halper to avoid terminating sanctions by paying compensatory monetary sanctions and sitting for her deposition on January 31, 2017. Lenders requested more than $100,000 in compensatory sanctions, but the bankruptcy court limited the monetary sanction to $40,000 payable in $10,000 increments; three of the payments were due before the deposition. The bankruptcy court's order warned Ms. Halper that failure to comply would result in terminating sanctions.

Ms. Halper made only one installment payment. Terminating sanctions followed; the bankruptcy court struck Ms. Halper's answer, directed entry of default, and directed Lenders to file a motion for default judgment.

Lenders so moved. Ms. Halper did not file a written response, but, at the hearing on the motion, she requested additional time to pay off the outstanding sanctions award. The bankruptcy court denied the oral request and then entered default judgment against Ms. Halper in the two adversary proceedings. Ms. Halper appealed, we affirmed the bankruptcy

6

court's entry of default judgment and imposition of terminating sanctions, and Ms. Halper appealed to the Ninth Circuit where briefing continues.

Ms. Halper, through new counsel, later filed a request for an indicative ruling on a Civil Rule 60(b) motion to vacate the default judgments. She argued that relief was appropriate under Civil Rule 60(b)(1), (b)(5), and (b)(6), because she had secured the money to pay the remaining $30,000 in compensatory sanctions, and under Civil Rule 60(b)(2), because she had newly discovered a pending investigation by a United States Attorney's Office in Washington.

The bankruptcy court's tentative ruling indicated that it would deny the motion. It explained that the newly available money did not warrant relief under Civil Rule 60(b)(1), (b)(5), or (b)(6); it noted that Ms. Halper's alleged 2018 discovery of a new investigation was irrelevant to her 2017 failure to pay sanctions; and it rejected Ms. Halper's suggestion that her prior attorney's alleged error (advice not to attend a deposition without also obtaining a stay of the deposition) qualified as excusable neglect. It emphasized that Ms. Halper was aware that failure to sit for her deposition would lead to sanctions. In addition, the bankruptcy court also noted that Ms. Halper failed to establish that she had a meritorious defense to the underlying lawsuit but instead focused solely on why she did not pay the monetary sanctions.

Three days later, at 4:09 p.m. on the day before the hearing,

Ms. Halper filed a supplemental declaration; she alleged for the first time that she had a meritorious defense.

The next morning, the bankruptcy court heard oral argument and refused to deviate from the tentative ruling. The bankruptcy judge acknowledged the supplemental declaration but stated: "as far as I'm concerned the declaration was late and not even to be considered." Hr'g Tr. (Aug. 7, 2018) 26:4–6. The bankruptcy judge clarified, on Ms. Halper's counsel's question, that this was part of her ruling. And to reiterate, the bankruptcy judge concluded:

> So as far as I'm concerned, her declaration is late. There's no reason to look at it. It's beyond the reply. I mean, you've got a reply and now it's beyond the reply. It's actually in response to the tentative ruling. But to the extent that I should look at it I still don't find it to be convincing that I should change my . . . ruling.

*Id.* at 27:1–7.

The bankruptcy court then entered an order denying the motion for the reasons identified in the tentative ruling and on the record at the hearing.

Ms. Halper timely appealed.[2]

---

[2] The bankruptcy court also entered an order certifying the appeal to the Ninth Circuit. 28 U.S.C. § 158(d)(2). But it does not appear that the parties timely requested permission to take a direct appeal to the court of appeals. Fed. R. Bankr. P. 8008(g).

## JURISDICTION

Ms. Halper erroneously suggests that the pending appeal deprived the bankruptcy court of jurisdiction to decide the motion. She is wrong. Because she filed a request for an indicative ruling, Rule 8008 allows a bankruptcy court to evaluate timely-filed motions for relief where it would otherwise lack decisional authority because an appeal is pending. Fed. R. Bankr. P. 8008(a). In particular, the bankruptcy court may defer considering the motion, deny the motion, state that it would grant it if the appellate court remands, or state that the motion raises a substantial issue. Fed. R. Bankr. P. 8008(a)(1)–(3). Ms. Halper expressly provided the bankruptcy court with the ability to rule; she cannot gainsay this decisional authorization now that she dislikes the outcome. Accordingly, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I).

We have jurisdiction over final orders and, with leave, interlocutory orders. 28 U.S.C. § 158(a). A more involved jurisdictional question relates to the finality of denial of an indicative ruling order—neither party discusses this. Nor has the Ninth Circuit definitively addressed the finality (i.e., appealability) of an order denying an indicative ruling request under either Rule 8008 or its counterpart Civil Rule 62.1.

In a recent unpublished decision, the Ninth Circuit treated the denial of a Civil Rule 62.1 motion as a final order. *Prosterman v. Am. Airlines, Inc.*, 747 F. App'x 458, 463 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1342 (2019)

9

(affirming denial of a Civil Rule 62.1 motion); *see also Russell Rd. Food & Beverage, LLC v. Galam*, 585 F. App'x 745, 746 (9th Cir. 2014). That said, the Ninth Circuit previously expressed doubts about this. *Halloway v. Horn*, 701 F. App'x 608, 610 (9th Cir. 2017) ("While several other circuits have decided (or assumed) that denial of a motion under Rule 62.1 is an appealable order in the case of a final appeal, we are not convinced that this court has jurisdiction to entertain such an appeal in this case."(citations omitted)). But we are aware of no circuit-level decision treating a merits-based Civil Rule 62.1 or Rule 8008 decision as interlocutory. The lack of any contrary out of circuit authority coupled with the Ninth Circuit's most recent implicit view of finality satisfies us that the order we review is final. To the extent we are wrong, we conclude that leave to appeal is warranted. We thus have jurisdiction over this appeal.

## ISSUE

Did the bankruptcy court abuse its discretion when it denied Ms. Halper's motion for an indicative ruling on a motion to set aside the default judgment?

## STANDARDS OF REVIEW

We review denial of a motion for an indicative ruling for an abuse of discretion. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1206 (8th Cir. 2015). We also review the denial of a motion to set aside a default judgment under Civil Rule 60(b)(1) or Civil Rule 55(c) for an abuse of discretion. *Brandt v.*

*Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1110 (9th Cir. 2011).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

We start by identifying the controlling authority.

### A.    The *Falk* factors govern.

Civil Rule 55 governs entry of default under Civil Rule 55(a) and entry of default judgment under Civil Rule 55(b). Fed. R. Civ. P. 55(a), (b); Fed. R. Bankr. P. 7055. And Civil Rule 55(c) governs the setting aside of a default or a default judgment: "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).

When a defendant seeks relief from a default judgment under Civil Rule 60(b)(1), including based on excusable neglect, the court applies the three factors governing the inquiry into "good cause" under Civil Rule 55(c). *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010); *see Brandt*, 653 F.3d at 1111 (9th Cir. 2011) (citing *Mesle*, 615 F.3d at 1091). These three factors are commonly

11

referred to as the "*Falk* factors" because they were first articulated in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam). *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015).

The *Falk* factors are: "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *Id.* (quoting *Mesle*, 615 F.3d at 1091) (alterations in original) (internal quotation marks omitted). A judgment by default is a "drastic step" and appropriate only in "extreme circumstances"; instead, cases should be decided, when possible, on the merits. *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463).[3]

---

[3] Even if a motion to vacate a default judgment is based on excusable neglect, the *Falk* factors govern. *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 927 (9th Cir. 2004) ("Because 'good cause' is typically enough to demonstrate 'excusable neglect,' no reason exists to analyze these criteria separately."); *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) ("The *Falk* factors quite effectively capture in the default judgment context the very equitable factors involved in the balance between the competing interests in assuring substantial justice and in protecting the finality of judgments that underlies Rule 60(b)(1). . . . So the *Falk* factors are, as far as we can see, quite sufficient after *Pioneer Investment* to guide district courts' exercise of discretion under Rule 60(b)(1) in the context of default judgments."). As a result, Ms. Halper's arguments about the factors from *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) are off point. And, in any event, although the bankruptcy court did not say the words *Pioneer* or *Falk*, it engaged in the correct equitable analysis. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000).

**B. The bankruptcy court did not abuse its discretion in providing an indicative ruling denying the motion to vacate the default judgment.**

Trial courts have considerable discretion in deciding a motion to vacate a default judgment. For a court to deny a motion for relief, it needs to find only one of the *Falk* factors present. *Aguilar*, 782 F.3d at 1105. That said, a court may find that one factor—or even two—is present and yet still grant relief. *Brandt*, 653 F.3d at 1112.

**Ms. Halper's culpable conduct led to the default judgment**. The Ninth Circuit has held that a "defendant's conduct [is] culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007).

Here, Ms. Halper's culpable conduct led to the default; it was entered based on terminating sanctions, which, in turn, were based on Ms. Halper's continued refusal to sit for her deposition and her failure to pay monetary sanctions.

Ms. Halper's appellate arguments are not persuasive.

First, she wrongly states that "all evidence" exonerates her. To start, she never presented any relevant evidence in support of her motion to vacate the judgment. Instead, the "evidence" she refers to is the declaration she filed the evening before the hearing. But the bankruptcy judge correctly

13

noted that the declaration was late and concluded that there was no reason to consider it. Ms. Halper never disputes this ruling on appeal. In any event, Ms. Halper's position reduces to this: her conduct was not culpable because she has a meritorious defense. But this conflates two of the *Falk* factors. And the Ninth Circuit has clearly held that the *Falk* factors are disjunctive—the court may deny relief if any one of the three factors is present. *Brandt*, 653 F.3d at 1111.

Second, Ms. Halper's alleged cooperation agreement with a United States Attorney's Office does not absolve her of culpability. As the bankruptcy court found, Ms. Halper did not know about the Washington investigation when she refused to sit for her deposition; it thus cannot positively impact her then-state of mind. In addition, after the bankruptcy court ordered discovery to go forward, Ms. Halper never raised the specter of an investigation again. So the bankruptcy judge concluded that Ms. Halper's "failure to make discovery from that point forward was strictly willful . . . ." That finding is not clearly erroneous.

Third, Ms. Halper repeats her argument that the bankruptcy court was "setting her up to fail" because she informed it that she could not pay the unpaid $30,000 sanction. But we have already rejected this position. *Halper*, 2018 WL 1354431, at *7 ("The bankruptcy court acknowledged Ms. Halper's concerns by revising the proposed payment schedule. (The bankruptcy court was not required to accept her unsworn and

14

uncorroborated statement that she could not afford to pay the monetary sanctions on the prescribed schedule.)").[4]

As a result, Ms. Halper's culpable conduct led to entry of default; this justifies denial of her motion under the *Falk* factors.

**Ms. Halper did not present evidence of a meritorious defense.**

Ms. Halper argues that the bankruptcy court improperly increased the applicable evidentiary standard. In the Ninth Circuit, the appropriate standard for "meritorious defense" is clear:

> A district court may deny relief under Rule 60(b)(1) when the moving party has failed to show that she has a "meritorious defense." "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. Rather, that question 'would be the subject of the later litigation.' " *Mesle*, 615 F.3d at 1094 (alteration in original) (citation omitted) (quoting *TCI Grp.*, 244 F.3d at 700). This approach is consistent with the principle that "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Grp.*, 244 F.3d at 700.

*Aguilar*, 782 F.3d at 1107.

---

[4] The bankruptcy court's payment schedule was intentional and reasonable. First, the bankruptcy court did not require Ms. Halper to pay all of the requested fees; instead, it required her to reimburse some of Lenders' attorneys' fees. Second, the bankruptcy court did not require her to pay the full amount before sitting for her deposition. Instead, it gave her time to obtain the funds.

We acknowledge that the bankruptcy court's recitation of the appropriate legal standard for evaluating the assertion of a meritorious defense may have been less than crisp and, indeed, suggested that a higher burden might be appropriate in the present case. But the bankruptcy court never enforced an improper standard. Instead, it concluded that Ms. Halper provided *no* evidence of a meritorious defense. This was correct. Ms. Halper cannot circumvent this finding by presenting selective, out-of-context quotes from the bankruptcy court's decision.

Ms. Halper attempts to salvage her appeal by referring to the declaration that she filed the evening before the hearing and several days after the bankruptcy court posted a tentative ruling identifying her failure to provide any evidence. But as already discussed, the bankruptcy court concluded that the declaration was late and thus not properly before it; again, Ms. Halper never disputes this ruling on appeal. As a result, the bankruptcy court did not err when it concluded that Ms. Halper failed to establish a meritorious defense. This justifies denial of the motion.

**Reopening the default judgment would prejudice Lenders.**
Ms. Halper argues that the bankruptcy court's conclusion that Lenders would be prejudiced by a delay in resolving the case was insufficient prejudice under relevant law. She is, in part, correct. "Prejudice requires greater harm than simply that relief would delay resolution of the case." *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009). Under *Falk*, the

16

question for prejudice "is whether [the plaintiff's] ability to pursue [its] claim will be hindered." *Falk*, 739 F.2d at 463.

But Ms. Halper overlooks that, in this case, attorney's fees are a significant source of prejudice. We acknowledge Ms. Halper's supposedly sincere desire to cure the underlying default by paying the remaining $30,000 in monetary sanctions. But that misses the point—the monetary sanctions were designed to compensate Lenders for the extensive and expensive litigation involved with compelling Ms. Halper to sit for a deposition. That litigation continues on appeal. The goal of the sanctions was to partially return Lenders to their position before Ms. Halper's obstructive behavior. Ms. Halper's insistence that she can now pay $30,000 ignores that Lenders have incurred and are prejudiced by additional attorney's fees defending their judgment on appeal. Thirty thousand dollars is no longer an adequate compensatory sanction. This prejudice, of course, is curable. *See Brandt*, 653 F.3d at 1110 n.1, 1112 (affirming district court's granting a motion to vacate a default judgment subject to the condition of the defaulting party paying the non-defaulting party's attorney's fees to oppose the motion and to appear at the hearing and noting that the prejudice could be cured). But that cure would require a payment of more than $30,000.

And Lenders have also been prejudiced in a way that is not curable. They have placed their entire theory of the case on the record in the context

of the default and default prove-up. Ms. Halper, having had this knowledge in her possession for nearly two years, now has the opportunity to frame her defense in a calculated and precise way that was not available before.

**The bankruptcy court was not required to explicitly state the words "extreme circumstances."** Ms. Halper argues that the bankruptcy court did not consider whether extreme circumstances justified entry of default judgment. We disagree.

To the extent Ms. Halper suggests that a failure to distinctly say "extreme circumstances" is a per se abuse of discretion, she is wrong. *Aguilar*, 782 F.3d at 1106 ("The 'extreme circumstances' policy language was intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion. When courts apply these factors, they must keep this policy concern in mind. However, nothing in *Falk* (or any other published decision) requires courts, in addition to applying these three factors, to articulate why a particular case presents 'extreme circumstances.' Our court has applied the *Falk* factors many times to ensure that default judgments are entered only in extreme circumstances, but has never imposed the 'magic words' requirement that Appellants seek."). And, in any event, there were extreme circumstances—they justified imposition of terminating sanctions, a decision which we have already affirmed on appeal. To put it simply,

18

Ms. Halper has intentionally avoided sitting for her deposition, which was noticed at least nine times, since September 2011.[5]

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[5] On appeal, Ms. Halper states that her former counsel's actions amount to fraud on the bankruptcy court under Civil Rule 60(d). She did not timely present this argument to the bankruptcy court, which reserved ruling on the matter. As Ms. Halper is pursuing these claims in a separate venue, we consider them no further.